IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARK O'FEE, : | |
| : | |
| Plaintiff, : | |
| : | CIVIL ACTION |
| v. : | |
| : | |
| THE CITY OF PHILADELPHIA, : | |
| SHAWN TRUSH, SYLVESTER : | No. 09-2724 |
| JOHNSON, WILLIAM COLARULO, : | |
| and DANIEL BARTLETT, : | |
| : | |
| Defendants. : | |

<u>MEMORANDUM</u>

**ROBERT F. KELLY, Sr. J.**                                                                                   **OCTOBER 2, 2009**

   Presently before the Court is the Motion to Dismiss Plaintiff's Complaint in Part filed by Defendants Shawn Trush ("Trush"), Sylvester Johnson ("Johnson"), William Colarulo ("Colarulo"), Daniel Bartlett ("Bartlett") and the City of Philadelphia (the "City") (collectively "Defendants"). For the following reasons, Defendants' Motion will be granted in part and denied in part.

**I.  FACTS**

   Plaintiff Mark O'Fee ("O'Fee") is a former police sergeant who was employed in the Northeast Detectives Division of the Philadelphia Police Department (the "Department") from November 1991 to June 2007. (Am. Compl. ¶ 6.) On June 16, 2009, O'Fee filed a Complaint in this Court against Defendants. On July 13, 2009, Defendants filed a Motion to Dismiss O'Fee's Complaint in Part, which was granted by this Court's Order dated July 27, 2009. O'Fee thereafter filed his Amended Complaint on August 10, 2009.

The Amended Complaint alleges that Trush, Johnson, Colarulo and Bartlett were policymakers and employees of the City of Philadelphia, and that they had the power to arrest, discipline and terminate employees. (Id. ¶¶ 7, 10-11.) O'Fee claims that he spoke out about a police officer who allegedly "slashed the face of a citizen"[1] and about Trush protecting that officer from prosecution or internal police discipline because Trush is a close friend of the officer's father. (Id. ¶¶ 20-22, 25, 51(a)-(b).) Specifically, O'Fee states that he reported police corruption, cooperated in the investigation of a corrupt police officer, testified truthfully in court about that corruption and petitioned the government for relief through grievance procedures in his collective bargaining agreement. (Id. ¶ 18.) O'Fee alleges that Trush oversees Internal Affairs Bureau ("IAB") investigations in the Department and that Trush would not allow an IAB investigation into Perez "until there was a positive identification to [Trush's] satisfaction." (Id. ¶ 26(a).) O'Fee asserts that although two positive identifications were subsequently made, Trush continued to maintain Perez's innocence without conducting an investigation. (Id. ¶ 26(b).) Thereafter, O'Fee claims that the IAB officers under Trush cleared Perez, and that Trush stated that he would "get O'Fee for this." (Id. ¶¶ 26(c), 27.) O'Fee further alleges that Trush and other investigators at IAB then refused to return the investigation file to the Northeast Detectives Division, thus preventing investigation into Perez with regard to the alleged assault. (Id. ¶ 26(d).)

After clearing Perez, O'Fee contends that Trush initiated retaliatory actions against him

---

[1] The parties identify this police officer as "Officer Perez" ("Perez").

that led to his arrest, criminal prosecution and eventual discharge from the Department.[2]  (Id. ¶¶ 26(e), 28-30, 42-44, 48, 51(b)-(c).)  In engaging in these alleged retaliatory actions, O'Fee asserts that Trush, Johnson, Bartlett and Colarulo acted in furtherance of the City's policy, custom or practice.  (Id. ¶¶ 36, 70-75, 77-82.)  In or about November 2008, a jury acquitted O'Fee of the "crimes alleged by Trush and the other Defendants."  (Id. ¶¶ 56, 85.)  Following his acquittal, O'Fee was not reinstated as a police officer.  O'Fee asserts that similarly situated police officers, however, including Trush, have been reinstated or promoted.  (Id. at ¶¶ 33, 64-67.)

O'Fee's Amended Complaint consists of five Counts:  Count I alleges a First Amendment retaliation claim pursuant to 42 U.S.C. § 1983 ("§ 1983") and a conspiracy claim pursuant to 42 U.S.C. § 1985 ("§ 1985"); Count II asserts a Fourth Amendment claim via the Fourteenth Amendment for unreasonable seizure and a conspiracy claim under § 1985; Count III asserts a Fourteenth Amendment claim for Equal Protection retaliation and a conspiracy claim under § 1985; Count IV alleges a § 1983 claim against the City pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) ("Monell claim"); and Count V alleges several state law claims, including a claim for wrongful use of civil process pursuant to 42 Pa.C.S. § 8351 et seq. ("Dragonetti Act"), a malicious prosecution claim, a claim for intentional infliction of emotional distress ("IIED") and a claim for civil conspiracy.[3]

On August 31, 2009, Defendants filed the instant Motion, requesting that the Court dismiss the following claims pursuant to Federal Rule of Civil Procedure 12(b)(6):  1) the

---

[2] O'Fee states that he was prosecuted for allegedly "not reporting events during the police investigation" and "with[holding] evidence that should have been disclosed."  (Id. ¶¶ 62-63.)

[3] Because O'Fee's Amended Complaint lacks a section for facts, but rather, intermingles multiple claims and facts throughout his five Counts, the Court is compelled to dismiss individual paragraphs and strike specific language in the Amended Complaint where we find that O'Fee has failed to plead a cause of action.

conspiracy claims under § 1985; 2) the Equal Protection retaliation claim; 3) the Monell claim; and 4) the state law claims.[4]

## II. STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993). Under Rule 12(b)(6), the defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, the Supreme Court stated that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. 544, 555 (2007).

Following Twombly, the Third Circuit has explained that the factual allegations in the complaint may not be "so undeveloped that it does not provide a defendant the type of notice which is contemplated by Rule 8." Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). Moreover, "it is no longer sufficient to allege mere elements of a cause of action; instead 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Id. (alteration in original) (quoting Twombly, 550 U.S. at 563 n.8). Furthermore, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level." Id. at 234 (quoting Twombly, 550 U.S. at 555). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that

---

[4] In the Memorandum supporting their Motion, Defendants argue against the validity of the Dragonetti Act claim, the malicious prosecution claim and the claim for IIED, but do not address the civil conspiracy claim.

discovery will reveal evidence of the necessary element.'" Id. (quoting Twombly, 550 U.S. at 556).

Recently, in Ashcroft v. Iqbal, the Supreme Court applied the Twombly standard, stating that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 570). The Supreme Court explained that deciding whether a "complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 1950. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id.

Notwithstanding Twombly and Iqbal, the general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief, not detailed factual allegations. Phillips, 515 F.3d at 231. Moreover, when evaluating a motion to dismiss, the court must accept as true all well-pleaded allegations of fact in the plaintiff's complaint, and must view any reasonable inferences that may be drawn therefrom in the light most favorable to the plaintiff. Id.; Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

### III.     DISCUSSION

**1. Conspiracy Claim Pursuant to § 1985**

Section 1985 provides a cause of action for a plaintiff injured by a conspiracy formed "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3).[5] In Farber v. City of Paterson, the Third Circuit explained that § 1985(3) requires that a plaintiff "allege both that the conspiracy was motivated by discriminatory animus against an identifiable class and that the discrimination against the identifiable class was invidious." 440 F.3d 131, 135 (3d Cir. 2006); see also Griffin v. Breckenridge, 403 U.S. 88, 102 (1971) (emphasizing that because § 1985(3) requires the "intent to deprive of equal protection, or equal privileges and immunities," a claimant must allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action" in order to state a claim).

In his Amended Complaint, O'Fee asserts: "Plaintiff is a member of a protected class; [sic] in that . . . he engaged in United State [sic] Constitutional First Amendment free speech and petition clause activity . . . ." (Am. Compl. ¶ 18.) The class of which O'Fee argues he is a member, however, is not an "identifiable class" for purposes of § 1985(3).

In Reilly v. City of Atlantic City, a former police officer brought an action under § 1985(3), alleging that city officials conspired to force him to retire because the officials disliked the officer personally due to the officer's role in the investigation of a friend of one of the

---

[5] O'Fee states only that he is bringing a claim under § 1985. However, the language in his Amended Complaint stating that "Plaintiff is a member of a protected class" indicates that O'Fee is attempting to invoke § 1985(3). (Am. Compl. ¶ 18.)

6

officials. 427 F. Supp. 2d 507 (D.N.J. 2006), aff'd in part and rev'd in part on other grounds, 532 F.3d 216 (3d Cir. 2008). The court found that the plaintiff had engaged in conduct protected by the First Amendment. Id. at 515. However, applying Farber, the court found "no evidence in the record to support a conclusion that [plaintiff] was a member of any protected class." Id. at 522. Thus, his § 1985(3) conspiracy claim failed on summary judgment. Id. Accordingly, because the class of which O'Fee alleges to be a member is not a protected class under § 1985(3), we will dismiss his § 1985(3) conspiracy claim.

### 2. Equal Protection Retaliation Claim

Defendants argue that O'Fee's Fourteenth Amendment Equal Protection retaliation claim must be dismissed because it is simply a restatement of his First Amendment retaliation claim. We agree.

In Oras v. City of Jersey City, the Third Circuit found that the plaintiff did not "state a valid claim under the Equal Protection Clause because [plaintiff's] cause of action merely rephrase[d] his First Amendment retaliation claim." No. 08-2277, 2009 U.S. App. LEXIS 6836, at *5 (3d Cir. Apr. 1, 2009). O'Fee attempts to present his First Amendment retaliation claim as an Equal Protection retaliation claim by arguing: "Johnson in disciplining Plaintiff and terminating the Plaintiff's employment, treated the Plaintiff differently that [sic] Trush, who [sic] Johnson promoted from Lieutenant to Captain following Trush's disclosure of violating the same disciplinary rule applied against the Plaintiff." (Am. Compl. ¶ 66.) This allegation is similar to the plaintiffs' allegation in Thomas v. Independence Twp. – that the defendants in that case "enforced [the law] in a selective fashion against them in retaliation for exercising their [c]onstitutionally protected rights." 463 F.3d 285, 298 n.6 (3d Cir. 2006) (alteration in original)

(internal quotations omitted).  The Third Circuit concluded that this language failed to support an Equal Protection retaliation claim, stating that a "pure or generic retaliation claim [] simply does not implicate the Equal Protection Clause."  Id. (alteration in original) (quoting Watkins v. Bowden, 105 F.3d 1344, 1354 (11th Cir. 1997)) (internal quotations omitted).  Therefore, because we find that O'Fee has merely rephrased his First Amendment retaliation claim, we will dismiss his Equal Protection retaliation claim.

### 3. Monell Claim

O'Fee states that "Trush, Bartlet, Colarulo and Johnson initiated criminal process against the Plaintiff to retaliate for and/or chill Plaintiff's petition clause activity, viz grieving under the collective braining [sic] agreement the [sic] discipline."  (Am. Compl. ¶ 32.)  O'Fee further argues that "Johnson in retaliation of plaintiffs [sic] free speech and petition clause activity . . . refused to reinstate the plaintiff upon his acquittal of the criminal charges."  (Id. ¶ 33.)  Additionally, O'Fee alleges that "the City as [sic] a policy[,] practice and custom to misuse its disciplinary process to chill federal rights and deny fundamental rights, such as to chill free speech and petition clause activity."  (Id. ¶ 78.)  Finally, O'Fee avers that "defendant Johnson as police Commissioner is a policy maker, and that Johnsons' [sic] action to approve the discipline against Plaintiff under the circumstances . . . establishes a policy of the City."  (Id. ¶ 79.)

Defendants assert that O'Fee has failed to state a claim under Monell because "[a]pproval of a disciplinary action is not an issuance of an official proclamation, policy, or edict."  (Mot. to Dismiss at 8.)  Defendants further argue that "individual actions by themselves do not establish a policy or practice, nor does the bald statement that the individual defendants are policy makers, with nothing more."  (Id.)  Finally, Defendants contend:

> Removing the legal conclusions and pleadings that simply recite the elements of a Monell claim, the complaint is left with the conclusory statement that the actions of the individual defendants as policy makers makes [sic] their action a policy, practice or custom. This essentially says nothing of substance and, under Iqbal, the claim clearly cannot survive a motion to dismiss.

(Id. at 9.)

In Monell, the Supreme Court held that "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury . . . the government as an entity is responsible under § 1983." 436 U.S. at 695. In City of St. Louis v. Praprotnik, the Supreme Court sought to "define the proper legal standard for determining when isolated decisions by municipal officials or employees may expose the municipality itself to liability under 42 U.S.C. § 1983." 485 U.S. 112, 114 (1988) (plurality opinion). The plurality held:

> [W]hen a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with their policies. If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final.

Id. at 127. The Third Circuit has repeatedly followed this holding in Praprotnik. See, e.g., Walsifer v. Borough of Belmar, 262 Fed. Appx. 421, 425 (3d Cir. 2008); Brennan v. Norton, 350 F.3d 399, 427-28 (3d Cir. 2003); LaVerdure v. County of Montgomery, 324 F.3d 123, 125-26 (3d Cir. 2003); Andrews v. City of Philadelphia, 895 F.2d 1469, 1481 (3d Cir. 1990).

In light of above cases, Defendants' arguments that "[a]pproval of a disciplinary action is not an issuance of an official proclamation, policy, or edict" and that "individual actions by themselves do not establish a policy or practice" fail to persuade the Court that dismissal of O'Fee's Monell claim is warranted at this stage of the proceedings. Regarding Defendants'

argument that removing legal conclusions and elements of a Monell claim from O'Fee's Amended Complaint renders it nothing more than a "conclusory statement" which "essentially says nothing of substance," the Court finds to the contrary. O'Fee's Amended Complaint, although poorly written, identifies the alleged policymakers, avers what the policy is and details how it was carried out by Defendants. Therefore, the Court finds that there are more than enough facts in the eighty-nine paragraphs of O'Fee's Amended Complaint to allow his Monell claim to withstand Defendants' Motion to Dismiss based on Iqbal.

### 4. State Law Claims

#### A. Dragonetti Act Claim

The Dragonetti Act, 42 Pa.C.S. § 8351 et seq., allows the imposition of liability on an individual for wrongful use of civil proceedings if: 1) "[h]e acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based;" and 2) "[t]he proceedings have terminated in favor of the person against whom they are brought." 42 Pa.C.S. § 8351(a). As stated in Ritzel v. Pa. SPCA, "[t]he language of the Dragonetti Act makes clear that it contemplates a cause of action solely for the wrongful use of civil proceedings." No. 04-2757, 2005 U.S. Dist. LEXIS 1904, at *16 (E.D. Pa. Feb. 9, 2005). The court in Ritzel therefore granted the defendants' motion to dismiss the Dragonetti Act claim because "[t]he proceedings brought against Plaintiff were all criminal in nature." Id. at *16-17. Accordingly, because the nature of the proceedings brought against O'Fee was criminal, rather than civil, we will dismiss his Dragonetti Act claim.

### B. Malicious Prosecution Claim

To state a claim for malicious prosecution, O'Fee must establish: 1) that the defendant initiated criminal proceedings against him; 2) that the proceedings were initiated without probable cause; 3) that the proceedings were initiated with malice; and 4) that the proceedings terminated in favor of the plaintiff. Tomaskevitch v. Specialty Records Corp., 717 A.2d 30, 33 (Pa. Commw. Ct. 1998). Defendants argue that "[i]n most of these paragraphs[,] plaintiff lays out some of the bare elements of a malicious prosecution claim. . . . This, however, is not enough under Iqbal." (Mot. to Dismiss at 17.) We disagree.

In his Amended Complaint, O'Fee states: 1) "Defedants initiated . . . criminal process against the Plaintiff" (Am. Compl. ¶ 83); 2) "Defendants lacked probable cause" (id. ¶ 84); 3) "Defendants . . . initiated . . . the process with malice" (id.); and 4) "[t]he process terminated favorably for the Plaintiff" (id. ¶ 85). Throughout his Amended Complaint, O'Fee alleges that Trush initiated retaliatory actions and criminal process against him that led to his arrest and prosecution. (Id. ¶¶ 26(e), 28-30, 42-44, 48, 51(b)-(c).) This allegation clearly supports the first element of O'Fee's claim. O'Fee also claims that Trush stated he would "get O'Fee for [cooperating in the investigation of Perez]" (id. ¶ 27), and that Trush and Bartlet "intentionally gave . . . false information about the facts to cause Plaintiff to be deprived of . . . his liberty" (id. ¶ 44). These alleged facts support the second and third elements of O'Fee's claim. O'Fee further asserts that in or about November 2008, a jury acquitted him of the "crimes alleged by Trush and the other Defendants." (Id. ¶¶ 56, 85.) This alleged fact supports the fourth element of his claim. Thus, not only has O'Fee pled all of the necessary elements of a malicious prosecution claim, but he has also sufficiently pled facts to support each element. Therefore, the Court finds that

O'Fee's malicious prosecution claim has been adequately stated under Federal Rule of Civil Procedure 8 and Iqbal.

### 3. IIED Claim

To state a claim for IIED under Pennsylvania law, O'Fee must establish that Defendants, through their extreme and outrageous conduct, intentionally or recklessly caused severe emotional distress to him.  Kazatsky v. King David Mem'l Park, 515 Pa. 183, 190-91 (Pa. 1987). "Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'"  Id. at 191.

Defendants argue that O'Fee "pleads the bare elements a claim for IIED, with the sole fact allegation that defendants initiated criminal proceedings against him for an unsavory purpose.  Under Iqbal, this is not sufficient to survive a motion to dismiss." (Mot. to Dismiss at 18.)  Defendants further assert that "[a]lthough the plaintiff's allegations, if they were true, would constitute inappropriate behavior, they clearly do not rise to the level of outrageousness required for an IIED claim." (Id. at 20.)  We disagree.

O'Fee alleges: 1) Trush and Bartlet "intentionally gave . . . false information about the facts to cause Plaintiff to be deprived of . . . his liberty" (Am. Compl. ¶ 44); 2) "Defendants actions were outrageous and beyond the bounds society is willing to accept" (id. ¶ 86); and 3) "[a]s . . . [a] direct and proximate result of the Defendants [sic] acts, action and conduct, the Plaintiff sustained . . . personal injury, such as emotional distress, anguish, and humiliation, which injury manifest[ed] into physical injuries, such as but not limited to headaches, upset stomachaches [sic], sleeplessness, eye twitching, and mood changes" (id. ¶ 89).  Moreover,

throughout O'Fee's Amended Complaint, he describes in detail how Defendants allegedly initiated his prosecution based upon fabricated facts in retaliation for his cooperation in the investigation of a police officer who allegedly slashed the face of an individual. (See id. ¶¶ 20-22, 25, 26(e), 28-30, 42-44, 48, 51(a)-(c).) The Court therefore finds that there are more than enough facts in O'Fee's Amended Complaint to allow his IIED claim to withstand Defendants' Motion to Dismiss based on Iqbal.

Furthermore, the Court finds that O'Fee's IIED claim rises to the level of outrageousness required under Pennsylvania law. We believe that the prosecution of a police sergeant on false grounds in retaliation for his cooperation in an investigation into police corruption would cause an average member of the community to resent the individuals who initiated the prosecution and lead him to exclaim, "Outrageous!" The Court therefore finds that O'Fee's claim for IIED survives Defendants' Motion to Dismiss based on Pennsylvania law.

An appropriate Order follows.